UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANNY T. BRADLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:16-cv-00832-DML-WTL |
| | ) |
| NANCY A. BERRYHILL,[1] Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Decision on Complaint for Judicial Review

Plaintiff Danny T. Bradley applied in August 2012 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that he has been disabled since April 1, 1984. Acting for the Commissioner of the Social Security Administration following a hearing held October 14, 2014, administrative law judge Ronald T. Jordan issued a decision on November 7, 2014, finding that Mr. Bradley is not disabled. The Appeals Council denied review of the ALJ's decision on February 18, 2016, rendering the ALJ's decision for the Commissioner final. Mr. Bradley timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. As provided by Fed. R. Civ. P. 25(d), she is substituted for Carolyn W. Colvin as the defendant.

Mr. Bradley contends the Commissioner's decision must be reversed and remanded because the ALJ unreasonably discounted his complaints of pain and did not fully and properly evaluate the functional capacity opinion of a physician who had treated him.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Mr. Bradley's specific assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[2] Mr. Bradley is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

---

[2]  Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and generally at 20 C.F.R. § 416.901 *et seq.*

The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on his age, work experience, and education (which are not considered at step four), and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the

4

evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

I.  **The ALJ's Sequential Findings**

Mr. Bradley was born in 1964 and was 20 years old at the alleged onset of his disability in 1984. Mr. Bradley's date last insured for purposes of the DIB program is September 30, 1985; thus, to receive DIB benefits, he must have become disabled on or before that date. Mr. Bradley does not attempt to establish any disability before 1985. Instead, he traces his disability to residuals from gunshot wounds suffered in 2005 or 2006[3] when he was shot in the back. (Dkt. 20 at p. 2). For SSI benefits, a claimant is entitled to benefits if he is disabled after his application date (whether or not he was disabled before then), and benefits are payable only for periods of disability after the application was filed (August 2012 in Mr. Bradley's case).[4] Mr. Bradley's job history includes work as a barber and part-time work at a newspaper where he fed advertisement inserts into a machine for placement inside the paper. In addition, in the months surrounding his application for benefits, a friend hired him to do some part-time work as a sound stage manager so that he had some income. (R. 34-35).

---

[3] The record sometimes states that Mr. Bradley was shot in 2005 and other times states that it occurred in 2006. The difference in dates is not material.

[4] As Mr. Bradley acknowledges in his opening brief, his application before August 2012 for disability benefits was denied and a final judgment affirming the Commissioner's decision was entered on September 23, 2013. Dkt. 20 at p. 1.

5

At step one, the ALJ found that Mr. Bradley had not engaged in substantial gainful activity. At steps two and three, he determined that Mr. Bradley's severe impairments were "residuals of gunshot wounds and obesity" (step two), but that no listing was met or medically equaled (step three). Mr. Bradley does not raise any error in the ALJ's evaluation at steps one through three. In his RFC, the ALJ limited Mr. Bradley to light work requiring the ability to sit/stand/walk 6 hours of an 8-hour work day, with some additional postural restrictions. He also forbad jobs requiring ambulation on wet or uneven surfaces. (R. 17). Mr. Bradley had no past relevant work to evaluate at step four. At step five, and based on the testimony of a vocational expert, the ALJ decided Mr. Bradley is capable of performing the functions of three light-level, unskilled jobs that exist in significant numbers in the relevant economy (machine operator, assembler, and hand packager), and therefore is not disabled.

## II. Mr. Bradley's Assertions of Error

Mr. Bradley raises two errors. First, he asserts that the ALJ erroneously rejected his testimony that his chronic pain made him unable to work. Second, he asserts that the ALJ failed to properly evaluate the opinion of a physician (Dr. Peters) about his functional capacity. The court will address each contention in turn.

## A. The ALJ's credibility determination is not patently erroneous.

Mr. Bradley's first asserted error—the ALJ erroneously or "arbitrarily" rejected functional limitations caused by pain in his spine that made him unable to work—is an attack on the ALJ's credibility determination.

Social Security Regulation 96-7p requires an ALJ to consider a claimant's subjective complaints in light of the relevant objective medical evidence, as well as any other pertinent evidence. That additional evidence can include the claimant's daily activities, the severity and intensity of the claimant's symptoms, precipitating and aggravating factors, medication, treatment, and other measures to relieve the person's symptoms and their efficacy and side effects. Because the ALJ sees and hears the claimant, his assessment of the claimant's credibility is entitled to special deference from the court. *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). The court's rule is "limited to examining whether the ALJ's determination is 'reasoned and supported,' and it may not overturn the ALJ's finding unless it is 'patently wrong.'" *Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008).

As noted previously, Mr. Bradley had been shot in the back in 2005 or 2006 and had suffered back pain since then. Lumbar spine x-rays from 2011 and February 2014 showed that a bullet fragment had remained in the lower sacral spinal canal. The February 2014 x-ray remarked that he had advanced chronic disc degeneration at L3-L4 and L4-L5. (R. 453-54).

Mr. Bradley contends that the ALJ erroneously discounted the severe pain from his back problems by considering only whether his pain complaints were

7

supported by objective medical evidence and by relying on lack of treatment when Mr. Bradley did not have medical insurance for a time and could not afford treatment. *See* Dkt. 20 at pp. 8-9. Mr. Bradley's contentions are, however, inconsistent with a fair reading of the ALJ's decision. The ALJ's credibility determination included an evaluation of factors beyond whether the objective medical evidence was consistent with the level and intensity of pain Mr. Bradley testified he suffers from. For example, the ALJ discussed that Mr. Bradley had engaged in work activities in 2011 and 2012 at a medium level of exertion that were inconsistent with his claimed symptoms. He addressed that medications for pain had been effective. (R. 19). He noted that Mr. Bradley had, at the hearing, exaggerated other functional limitations (the ability to read and write) that were not mentioned anywhere else in the record and were inconsistent with his own disability function reports, and found that such inconsistency detracted from his overall credibility. (R. 20). Finally, the ALJ discussed Mr. Bradley's failure to attend physical therapy sessions that were prescribed in 2011 as treatment for his back pain, from which an inference can rationally be drawn that the pain must not have been as severe as he had claimed. Although Mr. Bradley suggests to this court that Mr. Bradley did not have insurance at the time, the record does not bear that out. Mr. Bradley received fairly regular treatment in 2011—including visits with physicians and x-rays—for his back complaints and was actually scheduled to attend physical therapy sessions in 2011. He attended only one session, and further sessions were terminated (with Mr. Bradley ultimately being discharged from

8

physical therapy by the provider) because he did not show up for scheduled appointments and did not try to reschedule ones he missed. (R. 397-99).

Because the ALJ's credibility determination finds rational support in the record and was not limited solely to considering Mr. Bradley's pain complaints in light of the objective medical evidence, the court cannot find that the determination is patently erroneous, requiring a remand.

### B. The ALJ provided sufficient reasons for rejecting Dr. Peters's opinions about Mr. Bradley's functional capacity.

Mr. Bradley also contends that the ALJ did not properly evaluate the opinion of Dr. Raymond Peters regarding his functional capacity. The administrative record shows that Dr. Peters first saw Mr. Bradley in February 2014 and had one more medical visit in April 2014. The ALJ discussed the records of both doctor visits and the x-ray (revealing advanced chronic disc degeneration) that was taken in connection with the first office visit. (R. 19). About five months after the last visit, Mr. Bradley saw Dr. Peters again. There is no record of an examination at that visit, but Dr. Peters prescribed a pain medication (Tramadol) and completed functional capacity paperwork for consideration in connection with Mr. Bradley's disability application. (R. 441-42; R. 457).

Dr. Peters's functional capacity paperwork consisted of two forms. On the first form, he wrote a diagnosis of "lumbar disc disease" and "gunshot wound to sacrum," a prognosis of "fair," and "specific restrictions" of "unable to stand & walk for long times." (R. 441). The second form is a check-the-box physical capacities evaluation, and Dr. Peters checked boxes concerning exertional activities (sitting,

9

standing, walking, lifting, carrying), manipulative activities, postural activities, and environmental restrictions. (R. 442). For sitting/standing/walking, Dr. Peters checked eight hours for sitting, six hours for standing, two hours for walking, and four hours for stand/walk in combination.

The ALJ's RFC permits Mr. Bradley to stand or walk or sit up to six hours of a work day. The ALJ did not specifically mention Dr. Peters's specific hours limits, and criticized as vague the doctor's summary statement in the first form where Dr. Peters wrote that Mr. Bradley's "specific restriction" was an inability to stand and walk "for long times." (R. 20). Mr. Bradley contends that the ALJ's failure to mention the hours limitations contained on the check-the-box form requires remand because the ALJ necessarily never evaluated the entirety of Dr. Peters's opinion, and thus did not provide a reasoned explanation for rejecting it.

The court disagrees. The ALJ's decision reflects that he did actually review all aspects of Dr. Peters's functional capacity check-the-box form by mentioning its exertional, manipulative, postural, and environmental restrictions. (R. 20). The ALJ also specifically considered that Dr. Peters had seen Mr. Bradley only twice in February and in April 2014, while noting "insignificant clinical findings" (normal gait, normal movement in all extremities, no significant spine tenderness to palpation, pain relief with Tramadol). He noted that the functional capacity opinion was provided five months after the last physical evaluation. These are good reasons that underlie the ALJ's decision to not adopt Dr. Peters's opinion in full.

An opinion of a treating physician about the nature and severity of a claimant's impairment is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). The rationale for according controlling weight in these circumstances is that a treating source may provide a longitudinal and detailed picture of a claimant's impairments and may bring a unique perspective to the medical evidence that may not be shown by objective medical findings alone or reports from individual examinations. *Id.* Controlling weight is never assigned, however, to a treating physician's opinion about the claimant's residual functional capacity because the "final responsibility for deciding [that] issue is reserved to the Commissioner." *Id.* § 404.1527(d)(2).

Thus, the ALJ was not required to give controlling weight to Dr. Peters's opinion and, as reflected above, he gave sufficient reasons for the weight he accorded it—accepting in large part Dr. Peters's views about the amount of weight Mr. Bradley can lift or carry in a work day and about limits on postural activities, but allowing walking abilities greater than that opined by Dr. Peters. Further, since Dr. Peters indicated Mr. Bradley can stand for six hours and stand and walk in combination for four hours, the ALJ's RFC for these exertional activities are not, as the ALJ stated, markedly different from Dr. Peters's view. The ALJ also considered that Dr. Peters did not have a lengthy doctor/patient relationship with Mr. Bradley, but only saw him twice, and that Dr. Peters's clinical findings did not

11

support his restrictions. Finally, the ALJ explained that he found that the state agency reviewing physicians' opinions about Mr. Bradley's exertional functioning capabilities were entitled to significant weight as more consistent with the evidence. (R. 21).[5]

In summary, the ALJ provided a reasoned explanation for his evaluation of the evidence, including the opinions of Dr. Peters and those of the state reviewing physicians, in deciding an appropriate RFC. Given the court's deferential standard of review, it cannot find reversible error requiring remand.

## Conclusion

For the foregoing reasons, the court AFFIRMS the Commissioner's decision that Mr. Bradley was not disabled.

So ORDERED.

Dated: September 26, 2017

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

---

[5] The court also notes that the vocational expert testified that the same jobs (machine operator, assembler, and hand packager) that are consistent with the functional capacity ultimately determined by the ALJ (a light level of exertion) are also available in significant numbers (1,300 for machine operator; 900 for assembler; and 500 for hand packager) at a sedentary level of exertion with a restriction to two hours of standing and two hours of walking in a work day. *See* R. 51-52.